EDITH H. JONES, Circuit Judge,
joined by E. GRADY JOLLY, JERRY E. SMITH, EMILIO M. GARZA, DeMOSS, EDITH BROWN CLEMENT and OWEN, Circuit Judges, dissenting from the denial of rehearing en banc:
With due respect to the panel majority’s diligence, we dissent from the court’s deni *162 al of rehearing en banc in this case. The majority opinion sends confusing signals to the district courts and, equally unfortunately, to our brethren in the state courts as to the acceptable standards and procedures for federal habeas review. The majority opinion also stands in tension with Congress’s goal, enacted through AEDPA, of enforcing comity and deference toward state court judgments of conviction.
The legal mischief in the panel’s decision lies in (a) its approval of the district court’s holding an evidentiary hearing solely to reassess the state court’s credibility choices,[1] and (b) its refusal to credit the state courts’ decisions based on the outcome of that federal hearing.[2]
BACKGROUND
The state courts were required to decide whether capital murder defendant Guidry requested advice of counsel during his interrogation, and whether the detectives told him, untruthfully, that his attorney said he should talk to them.[3] (Guidry confessed to murder for hire at the end of the questioning.) The state trial court held two pretrial hearings to ferret out the truth. Guidry and the detectives differed on what was said during the interrogation. Four attorneys testified concerning unofficial conversations with two of the detec-fives at a later date (the “in-chambers testimony”), which conversations could have left the impression that Detective Roberts may have lied about his contacts with Guidry’s attorney.
The state trial court denied Guidry’s motion to suppress the confession, stating in open court that the “[in-chambers] conversation was meaningless, except as it relate[d] to credibility.” Guidry v. Dretke, 397 F.3d 306, 314 (5th Cir.2005). The state court admitted Guidry’s confession, in addition to substantial circumstantial evidence. After Guidry’s conviction, the trial court wrote that:
At all times Guidry advised [Detective] Tonry in Hoffman’s presence that Gui-dry understood what his rights [were], never requested to have an attorney, never asked to call his attorney, never desired his attorney, never refused to discuss the case without his attorney. And, as a result, Guidry continued voluntarily discussing his complicity in the ... murder for hire with Detectives Hoffman and Tonry .... [T]he statements were voluntarily made, not induced by force, threats or coercion, nor were any promises made, nor was anything done to induce [Guidry] or cause [Guidry] to make anything but a knowing and intentional waiver of his rights *163 and a free and voluntary decision to confess.
(quoting the state trial court’s findings of fact and conclusions of law). Id. at 314-15. The court made no written findings regarding the lawyers’ testimony about the in-chambers conversation. Finding the trial court’s express and implicit findings supported by the record and consistent with its determination that Guidry had not requested an attorney, the Texas Court of Criminal Appeals (“TCCA”) affirmed the state court’s suppression ruling.
The state habeas court, without an evi-dentiary hearing, held that Guidry failed to demonstrate a violation of his Fifth Amendment rights. The habeas court cited the 1996 hearing (specifically referencing the testimony of attorneys Gottlieb and Duer) but not the 1997 hearing at which attorneys Scott and Yarborough testified. The TCCA made no express findings reconciling the conflicting testimony or balancing the credibility of the witnesses. The TCCA affirmed the denial of habeas relief.
In response to Guidry’s federal habeas petition, the district court conducted an evidentiary hearing after concluding that “[t]he state courts made no attempt to evaluate the veracity of the attorney testimony or analyze its implication in this case. The state courts made no specific finding with respect to the inconsistent and contradictory testimony by the police officers.” Guidry, 397 F.3d at 317. At the 2002 evidentiary hearing, all of the witnesses gave substantially the same, if not identical, testimony to that given at the state court hearings. However, a portion of Detective Roberts’s 2002 testimony was different from his 1996 and 1997 testimony. In 2002, he testified, inter alia, that Guidry may have had an attorney, given the number of days he had been in jail, and that Guidry may have told him he had an attorney. Guidry, 397 F.3d at 317-18. Roberts continued to deny the ultimate contentions: that Guidry requested a consultation with counsel during his interrogation, Guidry, 397 F.3d at 332, n. 2 (Garza, J., dissenting); and that Roberts lied to Guidry that his attorney advised Guidry to answer the questions.
The district court then reevaluated the witnesses’ credibility de novo, found that the detectives violated Guidry’s Fifth Amendment rights, and granted him habe-as relief on that claim. The panel affirmed the district court.

1. Granting a duplicative hearing.

Contrary to the panel majority, we would hold that the district court abused its discretion in ordering a de novo eviden-tiary hearing solely to reassess the credibility of the witnesses to the suppression issues who had already testified in at least one of the two state court evidentiary hearings. The panel majority’s approval of this redundant hearing cannot be reconciled with AEDPA’s requirement that the reasonableness of state court factfindings must be assessed “in light of the evidence presented in the state court proceedings.” 28 U.S.C. 2254(d)(2).[4] See also Holland v. Jackson, 542 U.S. 649, 124 S.Ct. 2736, 2737-38, 159 L.Ed.2d 683 (2004) (“whether a state court’s decision was unreasonable must be assessed in light of the record the court had before it”) (citing cases) (emphasis added). The majority relies heavily on *164 the federal court’s discretion to conduct hearings, conferred by Federal Rule 8 of the Rules Governing Habeas Proceedings, but that rule must be subservient to AED-PA and Supreme Court caselaw.
If the majority is right, then a federal court could, in its discretion, order an entire case retried in order to decide whether the evidence was constitutionally sufficient to support the defendant’s guilt, or it could retry the evidence on a Brady claim to judge the police officers’ credibility for itself. Any number of other examples could be advanced, but in all such cases, the federal court would be displaying the opposite of the deference to state court procedures and decisions from that mandated by AEDPA. Even before AEDPA was passed, where a state habeas petitioner “wanted the district court to hear the same evidence heard by the state court,” it was held that, “[t]his is not a valid reason for an evidentiary hearing in federal court.” Villafuerte v. Stewart, 111 F.3d 616, 633 (9th Cir.1997) (pre-AEDPA case, citing Keeney v. Tamayo-Reyes, 504 U.S. 1, 11-12, 112 S.Ct. 1715, 1721, 118 L.Ed.2d 318 (1992)).
Deference does not, of course, require the federal court always to approve state court credibility choices. Miller-El, 537 U.S. at 329, 123 S.Ct. at 1041. But a federal court has no warrant in AEDPA to retry historical facts simply to reassess witness credibility.[5] The tension with AEDPA is heightened in this case by the majority’s reliance on the circumstance that Detective Roberts actually changed his testimony in the federal district court hearing. The panel thus appears to broach the “new evidence” prong of AED-PA Section 2254(e)(2),[6] even though Guidry failed to satisfy the demanding predicate for admission of new evidence in the federal proceeding.

2. Rejecting the State Court Factfind-ings.

Pursuant to AEDPA, the factfindings of state courts are entitled to a presumption of correctness unless they are proven incorrect by clear and convincing evidence. 28 U.S.C. § 2254(e)(l). Here, the majority overturns the findings relating to the voluntariness of Guidry’s confession because it finds gaps in the witnesses’ testimony and it believes that the state courts failed to recite, explicitly reconcile, and measure the .relative credibility of all conflicting testimony. The majority holds that the district court need not accept the state court’s findings “because the trial court made no findings on considerable evidence critical to Guidry’s claim.” 397 F.3d at 326. To the majority, these sins of omission — especially concerning the lawyers’ testimony — apparently constitute clear and convincing evidence. The majority also holds that the state trial court’s unexplained omission of findings “on evidence crucial to Guidry’s claim, where the witnesses are apparently credible” brought into question whether the state courts reached a reasonable decision “in light of the evidence presented in the state court proceeding.” 28 U.S.C. § 2254(d)(2).
This is a close case on which reasonable federal judges can differ in result. But the majority’s reasoning misses the mark. *165 Our evaluation under AEDPA is not of the quality of the state courts’ reasoning process, but of the reasonableness of the relevant factual determinations. If the state court’s findings that Guidry did not express a desire to speak to his attorney and that he was not misled by the detectives are unreasonable in light of the attorneys’ testimony, then so be it, but the state courts’ failure to address the attorney testimony does not alone make the findings unreasonable.
The panel majority state over and over that their decision is fact-bound, and we hope it is regarded as such. The decisive importance attached by the majority to the state courts’ sins of omission can hardly be reconciled with the precedent of this court and the Supreme Court. Adhering to principles of finality, comity and federalism, we have held that the presumption of correctness applies to explicit factual findings, Valdez v. Cockrell, 274 F.3d 941, 947 & n. 11 (5th Cir.2001), and “to those unar-ticulated findings which are necessary to the state court’s conclusions of mixed law and fact.” Pondexter, 346 F.3d at 148. Under AEDPA, federal courts review only the state courts’ ultimate decision, “not every jot of its reasoning.” Santellan v. Cockrell, 271 F.3d 190, 193-94 (5th Cir. 2001). The “parsing of the state habeas court’s findings does not conform to the spirit or letter of AEDPA’s [§ 2254(e)(1)] deferential standards.” Pondexter, 346 F.3d at 142. Finally, the en banc court has held that “[i]t seems clear to us that a federal habeas court is authorized by Section 2254(d) to review only a state court’s decision, and not the written opinion explaining that decision.” Neal v. Puckett, 286 F.3d 230, 246 (5th Cir.2002) (en banc).
Granting deference to state courts’ implicit and explicit historical factfindings predates AEDPA, moreover, and is in fact a bedrock principle of federal habeas jurisprudence. See, e.g., Marshall v. Lonberger, 459 U.S. 422, 433, 103 S.Ct. 843, 850, 74 L.Ed.2d 646 (1983) (Sixth Circuit’s reassessment of respondent’s state trial court testimony was improper, whether undertaken because of state court’s failure expressly to find credibility or out of federal court’s desire to make a de novo review of the weight of the evidence); LaVallee v. Delle Rose, 410 U.S. 690, 93 S.Ct. 1203, 35 L.Ed.2d 637 (1973) (because it was clear that the trial court would have granted relief had it believed the defendant’s testimony, its failure to do so was tantamount to an express finding against credibility).
Viewed in light of this guiding precedent, the panel majority’s result may be justifiable, but the majority countenances an untenable district court procedure that unjustifiably undermines the letter and spirit of AEDPA. It is unsurprising, then, that the majority’s analytical reasoning is anomalous. We respectfully dissent.

.The panel concisely summarizes the reasons for the district court's decision to conduct an evidentiary hearing:
(1) testimony by Guidry and four lawyers— three of whom had served as assistant district attorneys — formed the basis for a constitutional claim that, if true, might entitle Guidry to relief;
(2) gaps, inconsistencies, and conflicting testimony were not explained, or even mentioned, in the trial court's findings of fact and conclusions of law; and (3) these omissions reflected the trial court's failure to make crucial credibility assessments.
Guidry v. Dretke, 397 F.3d 306, 324 (5th Cir. 2005). The panel then approvingly states that "[t]hese quite legitimate concerns about conflicting evidence permitted the district court, within AEDPA’s boundaries, to investigate those conflicts so that it could rule properly on the habeas petition.” Id.

. The panel states with approval that, pursuant to 28 U.S.C. § 2254(e)(1), "the district court did not accept the state court's determinations of fact because the trial court made no findings on considerable evidence critical to Guidry's claim.” Guidry, 397 F.3d at 326.

. A painstaking recitation of the facts appears in the majority opinion. Only a thumbnail sketch appears here.

. See Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) (Section 2254(d)(2) means that a decision "adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding”) (emphasis added).

. Here the federal district judge explicitly stated, "I need to be able to make some credibility determinations on my own and figure out what's going on. Now that I heard the evidence, I guess it's time for me to look at basically the same issues again but with a little more knowledge.” Guidry, 397 F.3d at 333 (Garza, J., dissenting) (quoting the federal district court record) (emphasis added).

. 28 U.S.C. § 2254(e)(2) sets stringent limits on the factual development of a new claim in federal habeas.